IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM C. BROWN, III (#20230112155), | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 23 C 2710 ) |
| COOK COUNTY SHERIFF'S OFFICE, COOK COUNTY DEPARTMENT OF CORRECTIONS, CERMAK HEALTH SERVICES, NURSE STEWART, TOM DART, SHERIFF, and COOK COUNTY JAIL ADMINISTRATION, | ) ) ) ) ) ) ) ) |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff William C. Brown III, proceeding *pro se*, has filed suit under 42 U.S.C. § 1983, alleging that defendant Cook County Sheriff Tom Dart, the only remaining defendant in this case,[1] violated his rights under the Fourteenth Amendment.[2] Dart has moved to dismiss Brown's amended complaint for failure to state a claim upon which relief may be granted. The Court denies the motion for the reasons discussed below.

### Background

Brown alleges that on the morning of January 19, 2023, while he was housed as

---

[1] Plaintiff's Amended Complaint does not assert any claims against Nurse Stewart, and the Court has already dismissed all other defendants.

[2] Plaintiff's Amended Complaint does not explicitly allege violations of any particular constitutional provision, but as explained below, the Court construes the claims as asserted under the Fourteenth Amendment.

a pretrial detainee in the Cook County Jail and was preparing for a court appearance later that morning, he was assaulted by several inmates as he left the showers. While heading toward a staircase that led to his cell, Brown was confronted by a member of a street gang who spat on him and repeatedly punched him in the face and head. Brown broke his right ring finger trying to defend himself, and his assailant seized on that injury to throw Brown to the ground and get on top of him. While the two scuffled, eight other gang members "swarmed" Brown, pretending to break up the fight but instead punching and kicking Brown.

The assault left Brown "writhing in pain," with the knuckles of his right hand bloodied where the primary assailant had bitten him. As they left, several other assailants warned him not to "say sh*t" or they would "f**k [him] up." Eventually, a correctional officer appeared and called a sergeant. Brown was taken to the dispensary, where he was given some bandages and discharged. After returning from court later that evening, Brown found himself in "tremendous" pain, with his "right ring finger . . . swelled to an obscene size." For two weeks, Brown says, he received no further medical treatment from Cermak Health Services, so he acquired pain medication from fellow inmates. On February 1, 2023, he was given an x-ray, which revealed that his finger was broken, a diagnosis that was confirmed at Stroger Hospital. Stroger discharged Brown "with instructions for the jail/Cermak to splint [the] finger" and gave him an appointment to see a hand specialist, but the finger was never splinted, and the appointment with a specialist never materialized. By July 2023, Brown says, his finger had "healed improperly," costing him dexterity in that finger and leaving him unable to "make a tight fist."

None of this would have happened, Brown alleges, if the Cook County Jail had correctional officers supervising areas that "they are suppose[d] to be watching." To manage overcrowding and understaffing, the Jail staggers the release of decks of inmates into common areas like the dayroom. Though these staggered releases are designed to ensure that there are enough deputies to supervise the released inmates, deputies are also required to engage in "cross-watching," temporarily leaving their posts supervising the released inmates to check o" other inmates who have been left unsupervised. Because Brown had a court appointment that morning, he was allowed out of his cell for a "court shower" even though he was among those inmates who should have remained on their deck. As Brown began his shower, the deputy who "was supposed to be watching [him] left" to cross-watch another area, leaving Brown and his assailants unsupervised and exposing Brown to harm.

Brown alleges that Dart is responsible for Brown's exposure to harm "because he is the Sheriff, and he has not ensured" that there are enough deputies working and present to protect those in custody from harm. Although Brown does not identify a particular constitutional provision defendant is alleged to have violated, that failure does not impose any impediment to his suit, for a complaint need not "identify any particular legal theory" or "allege all legal elements" of a claim. *Brown v. Meisner*, 81 F.4th 706, 708 (7th Cir. 2023). Based on the factual allegations, the Court construes the amended complaint as alleging violations of the Fourteenth Amendment, the constitutional provision that protects pretrial detainees.

## Discussion

To survive a motion to dismiss for failure to state a claim upon which relief may

3

be granted, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In ruling on a Rule 12(b)(6) motion, a court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Taha* v. *Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). Where, as in this case, the plaintiff is proceeding *pro se*, the court construes the complaint "'liberally,' holding it to a 'less stringent standard than formal pleadings drafted by lawyers.'" *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (quoting *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)).

## Discussion

Dart makes a single argument for dismissal: he contends that the amended complaint does not allege facts sufficient to support an official capacity claim against him. Such a claim, he argues, is effectively one against the Cook County Sheriff's Department as an entity and therefore requires plaintiff to establish municipal liability as defined in *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). This requires a plaintiff to plausibly allege, and eventually prove, that he "(1) suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority; which (3) was the proximate cause of his injury." *Scott v. Dart*, 99 F.4th 1076, 1088–89 (7th Cir. 2024) (quoting *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014)).

4

Dart argues for dismissal based only on the second element, which presents three distinct, though non-exclusive, avenues for establishing a connection between the municipality and the alleged deprivation. *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2017). Although these three theories of liability involve distinct inquiries, "[t]he central question is always whether an official policy, however expressed . . ., caused the constitutional deprivation." *Id.*

Dart offers arguments to defeat all three of these theories. The Court addresses each in turn.

I. **Express Policy**

"The express policy theory applies, as the name suggests, where a policy explicitly violates a constitutional right when enforced." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Under this theory, a single "application of the offensive policy resulting in a constitutional violation is sufficient to establish municipal liability." *Id.* at 379–80.

Dart argues that Brown does not plausibly to allege an express policy because the amended complaint "does not point to any specific language that explicitly violates a constitutional right when enforced as required to pursue a *Monell* express policy theory."

Brown here has plausibly alleged the existence of a policy. To be sure, his amended complaint never uses the word "policy," but our system of notice pleading requires no such "magic words." *See Martinez v. Hooper*, 148 F.3d 856, 858–59 (7th Cir. 1998) ("[A] plaintiff is not required to use magic words, nor are civil rights plaintiffs held to a higher standard of pleading than other litigants."). What matters whether the complaint supplies a basis for inferring that there is a "policy," a "custom," a "practice,"

5

or the like. Brown's amended complaint does that, alleging, for example, that cross-watching was "created and implemented" and that "deputies are required" to cross-watch. These factual allegations sufficiently support the existence of "an official policy[.]" *See Glisson*, 849 F.3d at 379.

## II.    Custom or Practice

In the absence of an express policy, a plaintiff may establish *Monell* liability by plausibly alleging a widespread custom or practice that is "so pervasive that acquiescence on the part of policymakers [is] apparent and amount[s] to a [municipal] policy decision." *Arquero v. Dart*, 587 F. Supp. 3d 721, 728 (N.D. Ill. 2022) (quoting *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016)). "To succeed on that theory," the plaintiff "must allege facts permitting a reasonable inference 'that the practice is widespread and that the specific violations complained of were not isolated incidents.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (quoting *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)). "There is no bright-line rule defining a widespread custom or practice," *Arquero*, 587 F. Supp. 3d at 728, but a plaintiff must plausibly allege more than "a few sporadic examples" of constitutional deprivations resulting from the custom or practice. *Thomas*, 74 F.4th at 524 (quoting *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021)).

Dart argues that Brown cannot sustain a custom-or-practice claim because he alleges only a single incident of alleged constitutional deprivation, the assault on him that took place on January 19, 2023. Plaintiff makes no counterargument on this dispositive point and has therefore forfeited the point for purposes of the motion to

6

dismiss. *See Bradley v. Vill. of Univ. Park*, 59 F.4th 887, 897–98 (7th Cir. 2023) (counterarguments or issues waived if party fails to respond).

### III. Deliberate Act of a Decisionmaker with Final Policy-Making Authority

To succeed on a contention that the governmental entity may be held liable for "a deliberate act of a decision-maker with final policy-making authority," *Scott*, 99 F.4th at 1088–89, a plaintiff must plausibly allege that the "particular course of action" challenged "is directed by those who set municipal policy[.]" *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009). In other words, even if the plaintiff plausibly alleges that a particular official made the challenged decision, the "official also must be responsible for establishing final government policy on [the] particular issue" in question. *Id.* "The determination of whether a person has policymaking authority is a question of state law . . . to be decided by the court." *Id.*

Dart argues that Brown cannot succeed on this theory because he does not allege that Dart had final decision-making authority or that his injury was caused by an express decision by Dart. Brown responds that Dart "is responsible" because he is in charge of the Cook County Jail and "is the administrator with final policy-making authority" who "deliberately implemented the unwritten, widespread, customary practice of 'cross-watching'" and "ordered the deputies to 'cross-watch.'" Dkt. 21 at 1–2.

Dart replies that Brown's contention relies on facts not alleged in the amended complaint. First, Dart contends that Brown has not alleged that cross-watching is so widespread that it constitutes a custom or practice. He further argues that any such allegation is conclusory. Second, Dart takes issue with Brown's contention that he deliberately implemented the practice of cross-watching," arguing that it is outside the

7

scope of the amended complaint and is in any event conclusory.

The Court cannot endorse such a crabbed reading of a complaint, much less a *pro se* prisoner's complaint. *See Perez*, 792 F.3d at 776. Again, complaints need not identify legal theories or "allege all legal elements of a particular claim." *Brown*, 81 F.4th at 708. Thus, Dart need not have even identified a *Monell* theory of liability in his amended complaint. He also need not have alleged, in so many words, that cross-watching is such a widespread policy that it constitutes a custom or practice or that Dart deliberately implemented the unwritten, widespread customary practice of cross-watching.

More to the point, Brown has plausibly alleged that Dart is the decisionmaker responsible for cross-watching. Specifically, he alleges in the amended complaint that "deputies are required" to engage in "cross-watching" and that Dart "is responsible . . . because he is the Sheriff." Am. Compl. 5, 8. As a factual matter, these allegations are sufficient to plausibly allege that Dart made, or at least approved, the decision to implement cross-watching.

Whether Dart has final policy-making authority is, as the Court has indicated, "a question of state law . . . to be decided by the court." *Valentino*, 575 F.3d at 675–76. The pertinent inquiry is whether Sheriff Dart "is a policymaker 'in a particular area, or on a particular issue[.]'" *Id.* at 676 (quoting *Kujawski v. Bd. Of Comm'rs of Bartholomew Cnty.*, 183 F.3d 734, 737 (7th Cir. 1999)). Illinois law makes clear that a county sheriff "has sole control over the policies and practices of the jail." *Jones v. Dart*, No. 12 C 9272, 2013 WL 4854368, at *5 (N.D. Ill. Sept. 11, 2013) (quoting *Jacoby v. DuPage County*, No. 12 C 6539, 2013 WL 3233339, at *2 (N.D. Ill. June 26, 2013)). *See also* 55

8

Ill. Comp. Stat. 5/3-6017 (sheriff has "custody and care" of jail's operations); *Ryan v. County of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995) ("Illinois sheriffs are independently elected officials not subject to the control of the county."). This is enough to permit a finding that Dart had the final policy-making authority to implement cross-watching.

## Conclusion

For the reasons stated above, the Court denies Dart's motion to dismiss (dkt. 14). Dart is directed to answer the amended complaint by no later than August 5, 2024. By no later than August 19, 2024, each party is directed to file a status report that includes the following information: (1) the names of all persons who have information that the party may need to support its claims or defenses, <u>and</u> a short summary (2-3 sentences) of the topic(s) of the person's possible testimony; (2) a description, by category, of any documents that the party may need to obtain from the other side or from third parties to support its claims or defenses; and (3) a description, by category, of any documents that the party has in its possession or control that it may use to support its claims or defenses. A party that fails to file a status report by the due date may be subject to a sanction, up to and including dismissal of the case or entry of default. The case is set for a telephonic status hearing on September 9, 2024 at 8:45 a.m., using call-in number 650-479-3207, access code 980-394-33. Defense counsel is directed to make arrangements for plaintiff to participate by telephone.

Date: July 12, 2024

_____
MATTHEW F. KENNELLY
United States District Judge